## IN THE UNITED STAES DISTRICT COURT
## FOR THE EASTER DISTRICT OF PENNSYLVANIA

BRISTOL OAK PROPERTIES, INC.,    :
        Plaintiff,    :     No. 25-cv-0504-JMY
                      :
    vs.            :
                      :
COMMONWEALTH OF        :
PENNSYLVANIA, et al.,       :
        Defendants.    :

## MEMORANDUM

**Younge, J.**                                              **November 26, 2025**

Currently before the Court is a Motion to Dismiss for Failure to State a Claim and for Lack of Subject Matter Jurisdiction filed by Defendants, the Commonwealth of Pennsylvania, Pennsylvania Department of Transportation, and Michael Carrol (hereinafter the "Commonwealth Defendants"). (Commonwealth Defendants' Motion to Dismiss, ECF No. 14.) Defendants, Bensalem Township and Kenneth V. Farrall, as the Director of Building and Planning and the Zoning Officer for Bensalem Township (hereinafter the "Bensalem Defendants"), have also filed a Motion to Strike and Dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6). (Bensalem Defendants' Motion to Strike and Dismiss Plaintiff's Amended Complaint under Fed. R. Civ. P. 12(b)(6), ECF No. 16.) The Court finds Defendants' Motions appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Defendants' Motions will be granted, and all claims asserted in the Amended Complaint will be dismissed with prejudice and without leave to amend.

I.      **FACTUAL AND PROCEDURAL BACKGROUND:**

A.      **Procedural History:**

Plaintiff, Bristol Oak Properties, Inc., brings this lawsuit against Defendants: the

Commonwealth of Pennsylvania (the "Commonwealth"); Michael Carrol, the Secretary of the

Pennsylvania Department of Transportation ("Carrol"); the Pennsylvania Department of

Transportation ("PennDOT"); Bensalem Township; and Kenneth V. Farrall, the Director of

Building and Planning and Zoning Officer for Bensalem Township ("Farrall").  (Amended

Complaint ¶¶ 5-9, ECF No. 10.)  In this lawsuit, Plaintiff alleges that it owned two parcels of real

property in Bensalem Township, Pennsylvania which it sold prior to filing this lawsuit.  (*Id*. ¶¶ 2,

13, 39.)  Plaintiff further alleges that Defendants violated the fourth, fifth and Fourteenth

Amendments to the United States Constitution when Defendants refused to maintain

infrastructure in the form of a stormwater drainage system running along Bristol Road.  (*Id.*)

In the Amended Complaint, Plaintiff sues Defendants based on five separate legal

theories as follows: (1) Plaintiff asserts claims for malicious prosecution under Section 1983 (*Id.*

(Count I); (2) Plaintiff alleges that Defendants violated the Equal Protection Clause and the Due

Process Clause of the United States Constitution (*Id*. (Count II); (3) Plaintiff alleges that

Defendants violated its Procedural Due Process Rights under Section 1983 and Section 1985 (*Id.*

(Count III); (4) Plaintiff alleges that Defendants failed to maintain the stormwater system in

accordance with law and regulation under 1983 (*Id.* (Count IV); and (5) Plaintiff asserts state law

legal theories of negligence and tortious interference.  (*Id.* (Count V).)

The Commonwealth Defendants now move to dismiss for lack of subject matter

jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P.

12(b)(6).  (The Commonwealth Defendants' Motion to Dismiss.)  The Bensalem Defendants

have also filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Bensalem Defendants' Motion to Dismiss.)

**B.    Factual Background:**

Plaintiff owned two properties in Bensalem Township, Pennsylvania located at 4550 Bristol Road and 4432 Bristol Road, Bensalem Township, Bucks County, Pennsylvania which it sold prior to instituting this lawsuit.  (*Id.* ¶ 13, 39.)  Plaintiff alleges that between approximately 1975 and 1985, PennDOT installed a stormwater management system below the surface of Bristol Road, also known as State Route 2025.  (*Id.* ¶ 17.)  Plaintiff claims that over the years, despite occasional maintenance, PennDOT allowed the stormwater system's condition to deteriorate.  (*Id.* ¶ 20.)  Plaintiff further alleges that the Commonwealth Defendants were responsible for maintaining the stormwater management system which included the responsibility to ensure proper drainage to prevent unsafe water accumulation on Bristol Road. (*Id.* ¶ 14, 16.)  In support of its contention that the Commonwealth Defendants were responsible for stormwater management, Plaintiff specifically avers that between the years of 1975 through 1985 and again in 2010 and 2011, the Commonwealth Defendants along with the Bensalem Defendants installed, repaired and maintained the stormwater management system as if it was within their right-of-way.  (*Id.* ¶¶ 17-18.)

The Amended Complaint depicts a saga that took place over the course of more than a decade in which Defendants are alleged to have attempted to thwart and duck responsibility for the stormwater management system and related flooding along Bristol Road.  According to the narrative depicted in the Amended Complaint, Plaintiff became entangled in a bitter dispute with Defendants over who was responsible for maintaining the stormwater management system that ran adjacent to Bristol Road along the two properties.  Plaintiff alleges that Defendants

wrongfully took the position that maintenance on the stormwater system was Plaintiff's responsibility while Plaintiff maintains that Defendants were responsible for maintenance of the system.

Plaintiff avers that beginning on October 4, 2011, Defendant Bensalem Township issued a Notice of Violation to Plaintiff directing Plaintiff to repair damage on the property at issue that was related to the stormwater management system. (*Id*. ¶ 23.) On December 15, 2011, the Bensalem Township Defendants cited Plaintiff with two Summary Offenses for failure to cure the conditions of the stormwater management system identified in the Notice of Violation issued on October 4, 2011. Plaintiff allegedly challenged the two Summary Offenses by arguing that repair and maintenance of the stormwater management system was the responsibility of the Commonwealth Defendants rather than itself. (*Id*.) Plaintiff further asserts that it ultimately prevailed in its position and that the court dismissed Summary Offenses by finding that the Commonwealth Defendants were responsible for repair and maintenance of the stormwater system. After the court dismissed Summary Offenses, Plaintiff avers that PennDot made repairs to the damaged stormwater management system at 4550 and 4432 Bristol Road. (*Id*. ¶¶ 25, 26.)

Plaintiff claims that the condition of the stormwater management system continued to deteriorate and was at risk of failure by late 2022; however, Defendants continued to deny responsibility. (*Id*. ¶¶ 28.) Instead, the Bensalem Defendants issued another Summary Offense to Plaintiff on September 6, 2022, instructing Plaintiff to "repair all parking and asphalted areas of the property so that there [were] no longer any potholes, ruts, or other erosion issues on the property." (*Id*. ¶ 30.) Plaintiff claims he contacted the Bensalem Defendants to assert that Defendants were responsible for maintenance. (*Id*. ¶ 32.) Thereafter, the Bensalem Defendants

agreed to drop the Summary Offenses but allegedly continued to deny responsibility for the stormwater management system.  (*Id*. ¶¶ 34-35.)

Plaintiff alleges Defendants' failure to maintain the stormwater management system created a dangerous condition on its two properties and the adjacent area of Bristol Road.  (*Id*. ¶ 36.)  Plaintiff hired an engineering firm to analyze the condition of the stormwater management system, and the resulting report determined the system was going to fail imminently, causing damage to Plaintiff's properties and posing potential dangers.  (*Id*. ¶¶ 28-37, Report by Richard C. Grow, Amended Complaint, Ex. 4, ECF No. 2.)

To avoid these dangers and potential damage, Plaintiff alleges that it was forced to incur costs in excess of $600,000.00 to repair and replace the failing stormwater management system.  (*Id*. ¶ 39.)  Plaintiff thereafter conveyed the Bristol Road properties to new owners.  (*Id*.)  On July 9, 2024, prior to selling the real estate at issue in this litigation, Plaintiff granted an easement to PennDot so that it could access underground utilities and/or storm water sewer lines that were inadvertently installed beyond the original legal right-of-way running along Plaintiff's property adjacent to a public highway.  (Grant of Right of Way/Utility/General Access Easement, Am. Compl. Ex 5., ECF No. 10-5.)  It would appear that Plaintiff granted the easement to remediate a situation that developed after Defendants inadvertently installed underground utilities and/or stormwater sewer lines partially outside of the original right-of-way along Plaintiff's property.  (*Id.*)

## II.    LEGAL STANDARD:

### A.    Legal Standard for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6):

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

**B.    Legal Standard for Lack of Subject Matter Jurisdiction:**

A Rule 12(b)(1) motion is the proper mechanism for raising the issue of whether Eleventh Amendment immunity bars federal jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996), citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984) (Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction). When a motion to dismiss is based on lack of subject matter jurisdiction in addition to other defenses, "[a]n actual determination must be made whether subject matter jurisdiction exists before a court may turn to the merits of the case." *Tagayun v. Stolzenberg*, 239 Fed. App'x. 708, 710 (3d Cir. 2007); *see McCurdy v. Esmonde*, No. 02-cv-4614, 2003 U.S. Dist. LEXIS 1349, at *4 (E.D. Pa. Jan. 30, 2003).

## III.    DISCUSSION:

The Court will grant motions to dismiss filed by the Defendants.  Counts I through V of the Amended Complaint will be dismissed with prejudice for reasons explained in more detail hereinbelow in subsections A through H of this Memorandum.  Plaintiff will not be granted leave to file an amended complaint because the fact pattern of this case does not establish that a person acting under color of state law deprived Plaintiff of a right under the United States Constitution which is a prerequisite to establishing liability under 42 U.S.C. § 1983.  Plaintiff also fails to assert a viable claim under 42 U.S.C. § 1985.

When a motion to dismiss is granted, the Court must decide whether to grant leave to amend.  The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted.  See, e.g., *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990).  However, a court need not grant leave to amend when it would be an exercise in futility.  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); see also *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).  Since defects in Plaintiff's pleadings cannot be cured with further amendment, all claims asserted in this lawsuit will be dismissed with prejudice and without leave to amend.  See *City of Cambridge Ret. Sys.*, 908 F.3d at 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss'").

**A.**  **Eleventh Amendment Immunity Bars Claims Asserted against the Commonwealth of Pennsylvania, Pennsylvania Department of Transportation, and Michael Carrol:**

Plaintiff seeks damages from the Commonweath of Pennsylvania and the Pennsylvania Department of Transportation based on theories of direct liability under Section 1983 for alleged violations of the Fourth, Fifth and Fourteenth Amendments. Plaintiff also asserts similar claims against Defendant Carrol and has sued him in his official capacity as the Secretary for the Pennsylvania Department of Transportation.[1] However, the Eleventh Amendment generally bars suit against a state, its agencies, such as the Pennsylvania Department of Transportation, and/or a state official like Defendant Carrol in his official capacity.

The Eleventh Amendment prevents a private party from filing a lawsuit against a state, state agencies, and/or state officials in their official capacities by removing federal subject matter jurisdiction. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70 (1997); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst*, 465 U.S. at 100-01; *see also Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21, 31 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) for the proposition that the Eleventh Amendment "also bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury."); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state.") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

---

[1] PennDOT is an executive agency of the Commonwealth, and Michael Carrol is sued solely in his capacity as Secretary for PennDOT. *See* 71 P.S. §§ 61, 732-102; *Lavia v. Pa. DOC*, 224 F. 3d 190, 195 (3d Cir. 2000).

Eleventh Amendment immunity is subject to three basic exceptions: "(1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte Young*, a state official may be sued in his or her official capacity for prospective injunctive relief." *Hollihan v. Pennsylvania Department of Corrections*, 159 F.Supp.3d 502, 510 (M.D. Pa. 2016) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-70 (1997).

As it pertains to the first exception, it is well-settled that by enacting Section 1983 Congress has not abrogated Eleventh Amendment Immunity. *Id.* (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989)). Second, Pennsylvania has unequivocally withheld consent to suit under Section 1983. *Id.* "Section 8521 of Title 42 of the Pennsylvania Code clearly states, 'Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States.'" *Id.* (citing 42 Pa. C.S. § 8521(b)); *see also Lombardo v. Pennsylvania, Dept. of Public Welfare*, 540 F.3d 190, 196 (3d Cir. 2008); *see also Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). As for the third exception, Plaintiff cannot realistically pursue a claim for injunctive relief because it sold the properties at issue in this litigation. Therefore, it cannot establish the standing to pursue injunctive relief.[2] *Isabella v.*

---

[2] Standing to seek injunctive relief requires imminent threat of concrete particularized harm. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To satisfy this burden, a plaintiff must show (1) "that he is under a threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; (2) it must be fairly traceable to the challenged action of the defendant; and (3) it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.*; see also *Chamber of Commerce for Greater Philadelphia v. City of Philadelphia*, 2017 U.S. Dist. LEXIS 231022, *7 (E.D. Pa. May 30, 2017). "A federal court must dismiss a complaint for lack of subject matter jurisdiction under the case-or-controversy requirement of Article III of the United States Constitution if the plaintiff lacks standing to bring a claim." *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 544 (E.D. Pa. 2014) (*citing Lujan*, 504 U.S. at 560), aff'd 620 F. App'x 82 (3d Cir. 2015).

*Champagne*, No. 17-cv-2028, 2018 U.S. Dist. LEXIS 30860, *5-6 (E.D. Pa. Feb 26, 2018) (the district court dismissed a lawsuit based on the theory that plaintiff lacked standing to request declaratory and injunctive relief against an appointed conservator after selling the real estate at issue.)

Plaintiff fails to invoke any of the three exceptions to Eleventh Amendment immunity, so the Court will dismiss from this lawsuit Section 1983 claims asserted against the Commonwealth of Pennsylvania and the Pennsylvania Department of Transportation.  The Court will also dismiss Section 1983 claims asserted against Defendant Carrol because claims against state or local officials named in their official capacity are indistinguishable from claims against the governmental entity that employs them.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Thus, Section 1983 claims against Defendant Carrol in his official capacity are really claims against the Pennsylvania Department of Transportation and Commonwealth of Pennsylvania, which are shielded from Section 1983 suits by Eleventh Amendment immunity.  See *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("As an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity."); *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity.").  States are also not "persons" subject to liability under Section 1983.  *Will v. Michigan State Police*, 491 U.S. 58, 70 (1989).

Accordingly, the Court will dismiss with prejudice all claims asserted under Section 1983 against the Commonwealth Defendants, including official capacity claims brought against Defendant Carrol, because these claims are barred by the Eleventh Amendment.

**B.    The Doctrine of Qualified Immunity Protects Defendant Kenneth V. Farral in His Individual & Personal Capacity from the Section 1983 Claims Asserted by Plaintiff:**

Plaintiff brings suit under Section 1983 against Defendant Kenneth V. Farrall in Defendant's capacity as the Director of Building and Planning and in his capacity as a Zoning Officer for Bensalem Township.  However, the doctrine of qualified immunity shields Defendant Farrall from liability in his individual capacity for the federal constitutional violations asserted by the Plaintiff.  Qualified immunity protects government officials from liability for civil damages in lawsuits brought under Section 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In asserting a Section 1983 claim, "a plaintiff must allege both a deprivation of a federally protected right and that this deprivation was committed by one acting under color of state law." *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).  To determine whether qualified immunity protects officials in a particular case, courts must consider: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the right was clearly established at the time of the violation.  *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).)

In the Third Circuit, courts conduct a two-step inquiry to determine whether a government official is entitled to qualified immunity.  See *Morgan v. Fiorentino*, 811 F. App'x 798, 802 (3d Cir. 2020).  First, courts ask "whether the plaintiff sufficiently alleged the violation

of a constitutional right." *Id.* "If the facts, when viewed in the light most favorable to the plaintiff, do not show that the [official] violated a constitutional right, then plaintiff's § 1983 claim must fail." *Cox v. Hackett*, No. 05-cv-2260, 2006 U.S. Dist. LEXIS 51473, at *8 (E.D. Pa. July 27, 2006) (citing *Curley*, 298 F.3d at 277). Second, when the facts do show a violation, courts ask "whether the right was 'clearly established' at the time of the official's conduct." *Morgan*, 811 F. App'x at 802. To overcome qualified immunity, a plaintiff must not only successfully allege a violation of a constitutional right, but a plaintiff must also prove that the constitutional right was clearly established at the time the claim accrued. *Kelly*, 622 F.3d at 253. A right is clearly established if, given the circumstances, a reasonable official would not have known his/her conduct was a federal constitutional violation. *Id.*

Turning to the fact pattern of the case *sub judice*, Plaintiff is completely incapable of satisfying the first element of the qualified immunity analysis. As discussed at length in this Memorandum hereinbelow, it is the opinion of the Court that Plaintiff has failed to establish that any of the Defendants committed a federal constitutional civil rights violation. Therefore, the doctrine of federal qualified immunity shields Defendant Farral in his individual personal capacity from the claims asserted in the Amended Complaint. However, assuming arguendo there was a constitutional violation, it is the opinion of this Court that Plaintiff would equally be incapable of satisfying the second element of the test for evaluating qualified immunity.

When evaluating the second step in the application of the doctrine of qualified immunity, the question is whether a reasonable zoning officer or director of building and planning would have recognized that he or she was violating the United States Constitution when issuing the Notice of Violation in 2022 for potholes, sinkholes and ruts in the driveway and parking area of the Plaintiff's property. In this Court's opinion, Defendant Farrell did not violate a right that was

clearly established under the United States Constitution in issuing the Notice of Violation. In the Amended Complaint, Plaintiff describes owning real estate that was damaged by a stormwater system that was in imminent risk of failure. Plaintiff further alleges to have spent $600,000 to repair the stormwater drainage system. (Amended Complaint ¶ 39.) In the Amended Complaint, Plaintiff describes a severely damaged stormwater drainage system that was in imminent risk of failure which suggests that Defendant Farrall acted reasonably when issuing the Notice of Violation. It could reasonably be assumed that Defendant Farrall simply attempted to address a perceived public safety problem by issuing a Notice of Violation to prod the Plaintiff to correct defects in the real estate.

When conducting qualified immunity analysis under the second element of the two-part test, the Court must focus on whether a right is established in the circumstances of the case. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). The exact factual situation presented need not have been the subject of prior authority, but earlier precedent must be sufficiently analogous that a prudent government official would recognize that similar principles must guide their conduct. As the rule was described by the Supreme Court: "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635 (1987), 640; see also *Ashcroft v. Al-Kidd*, 563 U.S. at 741; *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

**C.    Plaintiff Fails to Plead Sufficient Facts in the Amended Complaint to Establish a Monell Claim against Bensalem Township:**

A local government, such as Bensalem Township in Bucks County, Pennsylvania, can be liable as "persons" under § 1983; however, this liability extends only to its "*own* illegal

acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978).  This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60.  In other words, municipal liability cannot be predicated on a *respondeat superior* basis.  *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.")  To plead a basis for liability against a municipal entity under Section 1983, Plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *Bowling v. Lehigh Cnty.,* 2024 U.S. Dist. LEXIS 31970, at *6 (citing *Monell*, 436 U.S. at 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)).

To state a plausible claim against a county under Section 1983, a plaintiff must allege that the county's policy or custom caused the violation of its constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed

to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a plausible claim. *See, e.g., Szerensci v. Shimshock*, No. 20-1296, 2021 U.S. Dist. LEXIS 187873, at *18-19 (W.D. Pa. Sept. 30, 2021) (citing cases).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

A plain reading of the Amended Complaint establishes that Plaintiff fails to allege that any policy or custom of Bensalem Township caused a violation of Plaintiff's constitutional rights. Furthermore, Plaintiff does not plead facts to establish a failure-to-supervise, train, or discipline. Accordingly, the Court will dismiss with prejudice all claims against Defendant Bensalem Township because the claims are not plausibly pled.

**D.      Plaintiff Fails to State a Claim for Malicious Prosecution under Section 1983:**

The Court will dismiss Count I of the Amended Complaint which sets forth claims for "malicious prosecution" under Section 1983. A plaintiff may bring an action under 42 U.S.C. § 1983 to redress a violation of "any rights, privileges, or immunities secured by the Constitution and federal laws." 42 U.S.C. § 1983. Thus, while malicious prosecution is generally a state-law tort, malicious prosecution claims may be brought under Section 1983. *Mills v. City of Covina*, 921 F.3d 1161 (9th Cir. 2019).

To prevail in a malicious prosecution claim against a state actor under Section 1983, Plaintiff must show a violation of its rights under the Fourth Amendment, and it must establish the elements of a malicious prosecution claim under state law. *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2002). To prevail in a Section 1983 malicious prosecution action, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted with actual malicious purpose or for a purpose other than bringing the defendant to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Furthermore, a Section 1983 claim must be filed within 2 years of when the criminal proceedings terminated in favor of the accused. *Bartholomew v. Fichl*, 782 F.2d 1148, 1155 (3d Cir. 1986); 42 Pa. C.S.A. § 5524.

Plaintiff's malicious prosecution claims fail because it did not plausibly plead facts to establish that any Defendant instituted criminal proceedings against it within the applicable two-year statute of limitations. For example, Plaintiff alleges that "On December 15, 2011, Bensalem Township and Farrall cited Plaintiff with two Summary Offenses for failure to cure" defective conditions – potholes, sinkholes and ruts – in the driveway and parking area of Bristol Oaks Properties. (Amended Complaint ¶ 24.; Notice of Violation, Amended Complaint, Exhibit 1, ECF No. 10-1; Non-Traffic Citations, Amended Complaint, Exhibit 2, ECF No. 10-2 page 8-9.) Defective conditions in the form of potholes, sinkholes and ruts allegedly presented a tripping hazard which Plaintiff avers was a result of the damaged stormwater system that Defendants failed to maintain. The Summary Offenses charged on December 15, 2011, were dismissed on June 27, 2012. (Docket Transcript, Amended Complaint, Exhibit 2, ECF No. 10-2 page 2-3.)

Plaintiff further alleges that "[o]n September 6, 2022, Bensalem Township and Farrall issued another Summary Offense directing Plaintiff to "repair all parking and asphalted areas of the property so that there are [no] longer any potholes, ruts, or other erosion issues on the property." (Amended Complaint ¶ 30.) Although Plaintiff avers that it received a Summary Offense on September 6, 2022, when discussing this purported Summary Offense, Plaintiff cites to a Notice of Violation issued by Defendant Farrall on September 6, 2022. (Notice of Violation, Amended Complaint Exhibit 3, ECF No. 10-3.) Therefore, it would appear that Plaintiff, erroneously referred to the Notice of Violation issued on September 6, 2022, as a Summary Offense. Plaintiff's erroneous reference to being cited with a Summary Offense on September 6, 2022, is confirmed through tacit admission in its response to the Bensalem Defendants' motion to dismiss. (Response in Opposition to the Bensalem Defendants' Motion to Dismiss page 4.) In its response in opposition, Plaintiff fails to discuss having received a Summary Offense in 2022; rather, Plaintiff refers to a "2022 Notice of Violation." (*Id.*)

Allegations in the Amended Complaint fail to establish that any of the Commonwealth Defendants instituted criminal proceedings against Plaintiff. With regard to the Bensalem Township Defendants, the Amended Complaint and exhibits attached thereto also establish that it has been well over a decade since the Summary Offenses issued in 2011 were dismissed. Therefore, Summary Offenses issued in 2011 cannot form the basis of a viable malicious prosecution claim because these claims are being asserted well after the expiration of the two-year statute of limitations. Finally, it is the opinion of this Court that the Notice of Violation issued in 2022 is simply insufficient to establish that the Bensalem Defendants instituted criminal proceedings against Plaintiff. A Fourth Amendment Section 1983 claim for malicious prosecution requires a seizure, i.e., an arrest. *DiBella v. Borough of Beachwood*, 407 F.3d 599

(3d Cir. 2005) (requiring plaintiff to attend trial for defiant trespass which is a petty disorderly offense did not constitute a seizure for Fourth Amendment purposes). The Bensalem Defendants issued a non-traffic citation to enforce a local property maintenance ordinance which this Court believes is insufficient to establish an arrest or seizure.

**E.** **Plaintiff Has Agreed to Voluntarily Withdraw Count II of the Amended Complaint:**

Plaintiff has agreed to voluntarily withdraw legal theories asserted under 42 U.S.C. § 1983 that are based on the concept that Defendants violated the Equal Protection Clause and Due Process Clause of the United States Constitution as set forth in Count II of the Amended Complaint. (Response in Opposition to Bensalem Defendants' Motion to Dismiss page 5, ECF No. 20; Response in Opposition to Commonwealth Defendants' Motion to Dismiss page 6, ECF No. 21.) Therefore, legal theories set forth in Count II of the Amended Complaint are no longer a going concern, and the Court is not required to engage in further analysis of their merits to dispense with these claims.

**F.** **Count III of the Amended Complaint which sets Forth Plaintiff's Procedural Due Process Claim is Dismissed from this Action:**

The Court will dismiss Count III of the Amended Complaint which sets forth claims brought under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 that are based on the legal theory that Defendants violated Plaintiff's procedural due process rights. (Amended Complaint, ¶ 56.) In its response to Defendants' motions to dismiss, Plaintiff clarifies its procedural due process claim by declaring that it is not premised upon the takings clause in the Fifth Amendment or the Eminent Domain Code of Pennsylvania, 26 Pa. C.S. § 101, *et seq*. (Response in Opposition to Bensalem Defendants' Motion to Dismiss page 5-6; Response in Opposition to Commonwealth Defendants' Motion to Dismiss page 6.) Rather, Plaintiff takes the position that its procedural due process, "claims are based on Defendants' ongoing efforts to sanction and punish Plaintiff

18

for protecting its Constitutional rights by seeking to impose fines and sanctions upon Plaintiff, thereby depriving it of due process." (*Id.*)

Plaintiff fails to set forth facts in the Amended Complaint to establish a procedural due process violation. The Amended Complaint cites to two instances where Plaintiff received summary criminal citations in 2011, and another instance where Plaintiff received a Notice of Violation in 2022. (*See* Amended Complaint, ¶¶ 24-25, 29-34.) Plaintiff avers that it successfully challenged summary criminal citations issued in 2011, and further avers that it challenged the Notice of Violation issued in 2022. Plaintiff comes forward with nothing to establish that the Notice of Violation issued in 2022 led to criminal charges. Therefore, by all accounts, Plaintiff received notice and/or warning of criminal charges, and it was provided with an opportunity to defend. It would also appear that Plaintiff prevailed by having criminal citations dismissed after having a meaningful opportunity to be heard, so Plaintiff's due process claims fails because due process requires notice, an opportunity to be heard, and the right to appeal to an impartial tribunal. *FOP Lodge No. 5 v. City of Philadelphia*, 267 A.3d 531, 549 (Pa. Cmwlth. 2021); *Abbot v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) ("At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard."). Based on the facts as pled in the Amended Complaint, Plaintiff received notice and was given an opportunity to tell its side of the story.

Plaintiff's procedural due process claims are equally deficient because it avers no facts to establish that the actions of the Defendants did anything to frustrate its ability to seek relief under Pennsylvania's Eminent Domain Code. Plaintiff does not, for example, allege that it attempted to and was unable to file a reverse condemnation action at any point in time during this saga that

lasted for more than a decade.  Plaintiff fails to cite to any instances where it was deprived of due process; therefore, these claims should be dismissed.

**G.    The Court will Dismiss Count IV of the Amended Complaint which sets Forth Section 1983 Claims for Failure to Maintain the Stormwater Management System in Accordance with Law and Regulation:**

The Court will dismiss Count IV of the Amended Complaint which sets forth claims brought under 42 U.S.C. § 1983 that are based on the legal theory that Defendants "[failed] to maintain [the stormwater system] in accordance with law and regulations."  (Amended Complaint ¶¶ 65-72.)  Allegations asserted in Count IV of the Amended Complaint will be dismissed because Plaintiff fails to plead facts to establish a deprivation of its rights under the Constitution or federal law.  Therefore, Plaintiff fails to establish a cognizable claim under Section 1983.

Section 1983 provides a vehicle for individuals to adjudicate violations of rights secured under federal constitutional or statutory law.  *Elmore v. Cleary*, 399 F. 3d 279, 281 (3d Cir. 2005).  However, Section 1983 "is not itself a source of substantive rights."  *Id*.  To state a Section 1983 claim, plaintiff must plead that defendant violated plaintiff's federal rights that are elsewhere specifically conferred and that violation of these rights caused injury.  *Elmore*, 399 F. 3d at 281.  *See Maher v. Gagne*, 448 U.S. 122, 129 (1980); *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir.1995); *Kneipp v. Tedder*, 95 F. 3d 1199, 1204 (3d Cir.1996).  Plaintiff must allege the deprivation of a specific constitutional right.  *McCurdy v. Dodd*, 353 F. 3d 820, 826 (3d Cir. 2003).  "One cannot go into court and claim a violation of § 1983 – for § 1983 by itself does not protect anyone against anything."  *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979).

Plaintiff does not cite to a single constitutional violation in Count IV of the Amended

Complaint.  In response to Defendants' motions to dismiss, Plaintiff cites to Pennsylvania state

court precedent that stands for the position that in relationship to sewage systems a governmental

entity can be found liable for the "actual work of construction or for failure to keep the work in

repair after it is completed.  [*Washington v. Johns*, 474 A.2d 1199, 1201-02 (Pa.Commw. 1984)

citing *Yulis v. Borough of Ebensburg*, 128 A.2d 118, 120 (Pa. Super. Ct. 1956).] *See also Cooper

v. Scranton City,* 21 Pa. Superior Ct. 17, 19 (1902); *Fair v. City of Phila.,* 88 Pa. 309, 311

(1879), 312; *Haus v. Bethlehem Borough,* 134 Pa. 12, 18 (1890); *Siegfried v. So. Bethlehem

Borough,* 27 Pa. Superior Ct. 456, 460 (1904); *Ringwalt v. Atglen Boro,* 49 Pa. Superior Ct. 517,

520 (1911)."  (Response in Opposition to Commonwealth Defendants' Motion to Dismiss page

6.)

The cases cited by Plaintiff do not stand for the proposition that it can bring a Section

1983 claim against Defendants based on the theory that they were negligent in installation and/or

maintenance of the stormwater system.  To the contrary, "[P]roof of negligence alone is

insufficient to impose liability under section 1983."  *Irvin v. Borough of Darby*, 937 F. Supp.

446, 450 (E.D. Pa. 1996) (citing *Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Daniels v.

Williams*, 474 U.S. 327, 330 (1986)).  Therefore, Count IV of the Amended Complaint will be

dismissed insofar as it asserts a non-cognizable claim under Section 1983.

**H.**    **The Court Declines to Exercise Supplemental Jurisdiction Over the State Law Claims
Asserted by Plaintiff:**

Plaintiff asserts a variety of state law claims against Defendants; such as, malicious

prosecution, negligence for failure to maintain, negligence and tortious interference.  The Court

will decline to exercise supplemental jurisdiction over the state law theories asserted by Plaintiff

in the Amended Complaint.  The decision to exercise supplemental jurisdiction is within the

discretion of the court.  28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction.  When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)).  The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

　　In non-diversity cases, such as the case *sub judice*, where the court grants summary judgement or dismisses all federal claims before trial, the general rule is that a district court should decline to exercise supplemental jurisdiction over the state law claims absent "extraordinary circumstances."  *Tully v. Mott Supermarkets, Inc.*, 540 F. 2d 187, 195 (3d Cir. 1976); *Johnson v. Trans Union, LLC*, No. 12-5272, 2013 U.S. Dist. LEXIS 71538, *12 (E.D. Pa. May 21, 2013) (declining to exercise jurisdiction over state claims since federal claims did not survive dismissal which eliminated original jurisdiction).

**IV.    CONCLUSION:**

For these reasons, the Court will grant the motions to dismiss filed by the Defendants.

The Amended Complaint filed by Plaintiff will be dismissed with prejudice and without leave to

amend.

BY THE COURT:

   /s/ John Milton Younge   
Judge John Milton Younge
